In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-1138

RONALD LEE GLADE, a disabled person, by
DICK LUNDSKOW,

*Plaintiff-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 3942—**James B. Zagel**, *Judge*.

ARGUED JULY 11, 2012—DECIDED AUGUST 22, 2012

Before POSNER, MANION, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*. This suit under the Federal Tort Claims Act was dismissed on the pleadings. So we take as true the allegations of the complaint, according to which the plaintiff is a resident of southern Wisconsin and a 64-year-old Navy veteran discharged at the age of 18 or 19, soon after joining the Navy, because of mental illness from which he continues to suffer. Sexually

abused by his parents and others as a child, he has long suffered from post-traumatic stress disorder, panic disorder, and bipolar disorder. He may also be schizophrenic; he "has multiple daily episodes where he experiences separation of himself in different personalities and loses contact with reality." He has received intensive inpatient and outpatient psychiatric treatment over the last 23 years from employees of the Veterans Administration.

Beginning late in 2007 a therapist employed at a VA medical center in Chicago but working out of a satellite VA office in Wisconsin and assigned to treat the plaintiff began a sexual relationship with him. He didn't want to have sex with her but she convinced him that it was a necessary part of her treatment of his mental illnesses. The sex acts apparently all occurred in Wisconsin, either in her home or in the satellite VA office. In 2008 the plaintiff complained to his psychologist about the therapist and the VA conducted an investigation that resulted in her admitting the sexual relationship. The complaint alleges that the relationship inflicted emotional distress on the plaintiff and made his mental illnesses worse.

The Federal Tort Claims Act makes the federal government liable for acts or omissions by its employees that would be torts in the state in which they occurred had they been committed by someone other than a federal employee. 28 U.S.C. § 2674. But there are exceptions, including one for claims "arising out of . . . battery," *id*., § 2680(h), which the parties agree is the tort com-

mitted by the therapist. (Sexual battery by deception is a common form of battery by medical personnel. Robert I. Simon, *Clinical Psychiatry and the Law*, 417, 430 (2d ed. 1992) (tab. 17-7); Kenneth S. Pope & Jacqueline C. Bouhoutsos, *Sexual Intimacy Between Therapists and Patients* 6-8 (1986); John F. Decker & Peter G. Baroni, "'No' Still Means 'Yes': The Failure of the 'Non-Consent' Reform Movement in American Rape and Sexual Assault Law," 101 *J. Crim. L. & Criminology* 1081, 1135 n. 365 (2011); AMA Council on Ethical and Judicial Affairs, "Sexual Misconduct in the Practice of Medicine," 266 *JAMA* 2741, 2741-42 (1991).) But the therapist is not a defendant; the Act governs suits not against federal employees but against their employer, the federal government. Therefore the exception for certain torts precludes imposing liability on the government for those torts under the doctrine of respondeat superior; otherwise the exception would be empty. *LM ex rel. KM v. United States*, 344 F.3d 695, 700 (7th Cir. 2003); *Doe v. United States*, 838 F.2d 220, 223 (7th Cir. 1988); *Kearney v. United States*, 815 F.2d 535, 537 (9th Cir. 1987).

The plaintiff seeks to elude the exception by pointing out that his suit charges not battery by the therapist but negligence by her supervisors in failing to detect and prevent her sexual battery of him. Respondeat superior makes an employer liable for torts committed by its employees within the scope of their employment even if the employer was not negligent in hiring, training, monitoring, or retaining the employee who committed a tort for which the employer has been sued. But if there was negligence by the employer, and not just by

the employee who was the immediate author of the injury—negligence in hiring or retaining or supervising that employee—the plaintiff has an independent negligence claim (as distinct from a claim based on respondeat superior) against the employer. See *Sheridan v. United States*, 487 U.S. 392, 401-03 (1988); *West v. Waymire*, 114 F.3d 646, 649 (7th Cir. 1997). Respondeat superior liability is derivative ("vicarious"); liability for an employer's negligence is direct.

The plaintiff's theory of liability is not, however, a conventional negligent-employer theory, which might for example support a claim that the therapist's supervisors knew or should have known that she had a proclivity for improper sexual relationships with patients yet did nothing to prevent or stop them. (Whether such a claim is possible under the Tort Claims Act is actually a contested issue, which we discuss briefly at the end of this opinion.) His theory rather is that the Veterans Administration had a "special relationship" with him that created a duty, independent of an employer's normal duty to screen and supervise its employees carefully, to use due care to protect him from being injured by VA medical personnel.

The term "special relationship" is lamentably vague. *Paine v. Cason*, 678 F.3d 500, 510 (7th Cir. 2012). What is intended to be conveyed by the term is a relation that creates a duty of care. There is no tort of negligence without a breach of a duty owed the victim by the tortfeasor. The duty of care to a stranger is generally limited to avoiding negligently injuring him, however, and thus

does not include a duty of protection, prevention, or rescue. If you are sitting on a beach and see a person struggling in the water and you're a strong swimmer and could save him but you do nothing and he drowns, you bear no tort liability for his death. W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 56, p. 375 (5th ed. 1984). But it would be different if you had invited him to go sailing with you and he fell off the boat and you refused to toss him a life jacket; having placed him in a situation of potential danger you are held to have assumed a duty to take reasonable care for his safety. *Id.* at 376; see *Paine v. Cason*, *supra*, 678 F.3d at 510-11. Even if in our first example you attempted to rescue the person (though you had no duty to do so) but were careless and as a result he drowned, you would be liable, on the theory that had you not intervened incompetently someone else might have rescued the person. Keeton et al., *supra*, § 56, p. 378.

Similarly a prison has a duty to its inmates to protect them against violence by other inmates because by imprisoning a person it has blocked his access to forms of self-protection and police protection that he would have on the outside. *Id*. at 383-84; *Restatement (Second) of Torts* § 320, comment b (1965). The plaintiff argues that his many years of inpatient and outpatient treatment by the VA made the agency responsible for protecting him from misconduct by its employees and therefore liable to him if he was injured as a result of the agency's failure to discharge its responsibility.

The government makes several counterarguments. One, which the district court accepted and is the ground

on which it dismissed the suit, is that the administrative claim that the plaintiff was required to file with the Veterans Administration as a condition precedent to suing the VA under the Tort Claims Act, 28 U.S.C. § 2675(a), does not mention a failure of anyone to use due care besides the therapist, and therefore the plaintiff failed to exhaust his administrative remedies. Reading the administrative claim you would think the plaintiff was just seeking damages under a theory of respondeat superior against an employer for an employee's battery, and we know that such a theory won't fly under the Tort Claims Act.

The plaintiff argues that anyone in the VA's legal department reading the claim should have realized that precisely *because* respondeat superior is not available when a complaint alleges only a tort for which the Tort Claims Act does not provide a remedy, he must have been seeking to fasten a different tort on the employer. But the different tort would have to be based on factual allegations beyond just the allegation of sexual misconduct by an employee, and there are no other allegations. The administrative claim need not set forth a legal theory, but it must allege facts that would clue a legally trained reader to the theory's applicability. *Palay v. United States*, 349 F.3d 418, 425-26 (7th Cir. 2003); *Murrey v. United States*, 73 F.3d 1448, 1452-53 (7th Cir. 1996). The plaintiff's claim didn't do that. The legally trained reader would assume that the plaintiff simply was unaware that the mere fact of a battery by a VA employee would not impose liability on the em-

ployer. We're about to see that the "special relationship" tort theory advanced in the plaintiff's complaint (as distinct from the administrative claim) is outside the bounds of plausibility—hardly the sort of theory that the VA's legal department should have guessed would be the ground of a lawsuit.

So the plaintiff did fail to exhaust his administrative remedies, as the district court held, and this alone should bar his suit, since the Tort Claims Act requires exhaustion of administrative remedies as a prerequisite to suit. 28 U.S.C. § 2675(a). In *Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008), however, and the following year in *Collins v. United States*, 564 F.3d 833, 838 (7th Cir. 2009), we explained that the Act's requirement of exhausting administrative remedies is not jurisdictional, the Supreme Court having made clear recently that the term "subject-matter jurisdiction" is "reserved 'for prescriptions delineating the classes of cases . . . within a court's adjudicatory authority.' *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)…. Thus 'to say that Congress has authorized the federal courts to decide a class of disputes is to say that subject-matter jurisdiction is present.' *United States v. T & W Edmier Corp.*, 465 F.3d 764, 765 (7th Cir. 2006). Obviously the federal courts are authorized to decide suits under the Federal Tort Claims Act; indeed, no other court system is. 28 U.S.C. § 1346(b)(1)." *Kontrick* supersedes opinions that term the exhaustion requirement jurisdictional, such as *Sullivan v. United States*, 21 F.3d 198, 206 (7th Cir. 1994). Since the requirement of exhaustion is not jurisdictional,

it can be waived or forfeited, or otherwise forgiven. But that hardly matters in this case, for in any event the plaintiff's claim has no merit.

The essence of the "special relationship" tort (a better term might be "relational tort"), as suggested by our examples, is that the relation between the parties creates a potential danger to one of them; the danger becomes the ground for imposing on the other party a duty of care that he would not otherwise have. Keeton et al., *supra*, § 56, p. 381; *Restatement*, *supra*, § 321; *Stockberger v. United States*, 332 F.3d 479, 482 (7th Cir. 2003). Custody is the most common example of such a relation. It needn't be involuntary (the prison case)—innkeepers and common carriers have a duty of care, in the sense of protection, to their customers. So do property owners who invite the public onto their land. *Restatement*, *supra*, §§ 314A(2)-(3). A hospital, including a mental hospital, likewise has a duty of care to its inpatients that is based on its housing them away from their homes. Keeton et al., *supra*, § 56, at 383; *Restatement*, *supra*, § 320, comment a. Although the plaintiff received both inpatient and out-patient treatment from the Veterans Administration, the former implying hospitalization, he was not hospitalized during the period in which the therapist was assaulting him sexually. He was living at home, and the assaults occurred during outpatient visits to her office and in visits to her home. He was not a ward of the VA. He was in no different situation from someone who has the wrong tooth pulled, by an incompetent dentist, and sues the clinic that employs the dentist, arguing that it should have discovered that he was incompetent and fired

him. That is a negligent-supervision claim, not a relational-tort claim.

This conclusion holds whether the applicable tort law is that of Illinois or Wisconsin—a threshold issue not addressed by the district court. The Tort Claims Act directs the court to determine in which state "the act or omission occurred" that is alleged to give rise to federal tort liability, and to apply the conflict of law rules of that state. 28 U.S.C. § 1346(b)(1); *Richards v. United States*, 369 U.S. 1, 9-10 (1962); *LeGrande v. United States*, 2012 WL 2913730, at *6 (7th Cir. Aug. 14, 2012); *Gould Electronics Inc. v. United States*, 220 F.3d 169, 180 (3d Cir. 2000). Although the sexual assaults apparently occurred in Wisconsin as we said, the allegedly negligent acts or omissions by the Veterans Administration that enabled the assaults may have occurred in Illinois as well as, or instead of, in Wisconsin; and it is the state or states in which those acts or omissions occurred whose law would determine whether they created liability under a relational-tort theory. But we cannot find any cases in either state that bear on our issue, and are given no reason to think that the states disagree with each other or would disagree with the applicable principles set forth in the *Restatement* and the Keeton treatise.

For completeness we note the government's alternative merits defense that the suit is barred because it "aris[es] out of" an excluded tort, namely battery. There is a sense in which that's true, and another sense in which it's not true. It's true in the sense that had there

been no sexual assaults, the plaintiff would have no case. But his claim equally can be said to arise from a failure by the defendant to exercise due care for his safety. The second interpretation is the sounder. *Doe v. United States*, *supra*, 838 F.2d at 223-25; see also *Sheridan v. United States*, *supra*, 487 U.S. at 400; *Leleux v. United States*, 178 F.3d 750, 757 (5th Cir. 1999). Had there been no sexual assaults the plaintiff would have no case, but equally had the defendants by exercising due care prevented the assaults he would have had no case. Both the therapist's battery and the VA's negligence played a causal role in the harm for which the suit seeks redress. If the battery that was the immediate cause of the harm would not have occurred had it not been for negligence by the Veterans Administration, that negligence was a cause of the plaintiff's injury from the battery. *Sheridan v. United States*, *supra*, 487 U.S. at 405 (concurring opinion). The plaintiff's claim fails not because the injury "arose from" the battery but because the VA did not breach a duty of care.

The government cites a line of cases, represented in this court by *Doe v. United States*, *supra*, which holds that the Tort Claims Act's denial of respondeat superior liability for excluded torts by federal personnel extends to suits for negligent supervision by the tortfeasor's supervisors. The other courts of appeals agree—all but the Ninth Circuit. Compare, e.g., *Perkins v. United States*, 55 F.3d 910, 916 (4th Cir. 1995); *Guccione v. United States*, 847 F.2d 1031, 1034 (2d Cir. 1988), and *Satterfield v. United States*, 788 F.2d 395, 399 (6th Cir. 1986), with *Senger v. United States*, 103 F.3d 1437, 1442 (9th Cir. 1996), and *Brock*

*v. United States*, 64 F.3d 1421, 1425 (9th Cir. 1995). (The Supreme Court left the question open in *Sheridan v. United States*, *supra*, 487 U.S. at 403 n. 8.) The courts in the majority express concern that respondeat superior liability might be "disguised" as negligent supervision, although the analytical distinction, at least, is clear. See, e.g., *West v. Waymire*, *supra*, 114 F.3d at 649; Keeton et al., *supra*, § 70, pp. 501-02. In any event, though the plaintiff in this case advanced a negligent-supervision claim in the district court, he has abandoned it on appeal.

The judgment of dismissal is

AFFIRMED.